IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GRECIA, )<br><br>Plaintiff, )<br><br>v. )<br><br>TRUE VALUE COMPANY, )<br><br>Defendant. ) | Case No. 1:18-cv-01886<br><br>Honorable Charles P. Kocoras |

## DEFENDANT TRUE VALUE COMPANY, L.L.C.'S
## RULE 12(b)(6) MOTION TO DISMISS

In his complaint, Mr. Grecia asserts three patent claims, all of which require a "computer product" to include a "communications console." Mr. Grecia alleges that a True Value Point of Sale device (*i.e.*, a credit card reader) is the claimed "computer product." At one point in his complaint, Mr. Grecia points to a chip card or a mobile device using a payment app (*e.g.*, Apple Pay) as the claimed "communications console." Elsewhere in his complaint, Mr. Grecia points to an entirely different structure—the bank's computer server—as the claimed "communications console." But neither of these structures are part of the accused Point of Sale devices, as the claims require. Accordingly, the accused devices do not infringe the asserted patent claims, and Mr. Grecia's complaint should be dismissed with prejudice.

### I.  Complaint Allegations[1]

Mr. Grecia alleges that True Value infringes claims 21-23 in the '860 patent. (Compl. ¶ 8). Of the asserted claims, claim 21 is the only "independent" claim.[2]

---

[1] True Value does not concede that any of the allegations in the complaint are true, but it assumes they are true—as the Court must—for the limited purposes of this motion.

A.    **The Complaint Identifies True Value's Point of Sale Device as the Claimed "Computer Product."**

Claim 21 requires "[a] computer product comprising," among other things, "a communications console."  (Compl. ¶ 9).  According to Mr. Grecia's complaint, True Value infringes by operating an "EMV Token Point-of-Sale computer product (EMV-PoS)" in various True Value stores.[3]  (Compl. ¶ 9).  In other words, the complaint alleges that True Value's EMV-PoS is the claimed "computer product."

The accused EMV-PoS, in simple terms, is a card reader device for credit card transactions; *i.e.*, the machine at the sales counter in which the customer inserts a chip card or scans a mobile device with a payment app to pay for a transaction.  The complaint alleges that the card reader reads a "verification token" from the chip card or mobile device.  (Compl. ¶¶ 9-10).  The card reader later requests and receives payment approval (or denial) from a bank (or credit card company).  (Compl. ¶ 13).  According to the complaint, the key to the patent is that this card reader does not read the credit card account information itself; rather, it reads a "token," which the bank associates with the customer's credit card account.  (Compl. ¶ 9).  That way, customers obtain an additional layer of security because the card reader device never obtains direct access to the credit card account information itself.  (Compl. ¶ 9).

---

[2] Claims 22 and 23 "depend" on claim 21; they incorporate all its limitations.  Noninfringement arguments that apply to claim 21, therefore, necessarily apply to claims 22 and 23.  *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 n.5 (Fed. Cir. 2008) ("A conclusion of noninfringement as to the independent claims requires a conclusion of noninfringement as to the dependent claims").  True Value therefore focuses this motion on claim 21.

[3] In fact, True Value stores are independently owned and operated and are not controlled by True Value Company, L.L.C.; but for purposes of this motion, the Court must construe all pleadings as true.

- 2 -

### B. The Complaint Identifies the User's Mobile Device or Chip Card as the Claimed "Communications Console."

Claim 21 requires the "computer product" to "receiv[e] the digital content access request from the communications console," where "the request compris[es] a verification token corresponding to the digital content." (Compl. ¶ 10). In short, claim 21 requires the "computer product" to receive a verification token from the "communications console":



According to the complaint, the "verification token (*e.g.*, EMV Token) is handled by the user as a redeemable instrument (*e.g.*, EMV Tokenized Mobile Device or Chip Card)." (Compl. ¶ 10). The complaint also alleges that "[t]he EMV Token (verification token)" includes a "purchase permission." (Compl. ¶ 10). Because the EMV PoS receives a "purchase permission" from the customer when the customer pays with a mobile device/chip card, the complaint identifies the user's EMV Tokenized Mobile Device or Chip Card as the claimed "communications console."



### C. The Complaint Identifies the EMV Token Service Provider as the Claimed "Communications Console."

Claim 21 also requires the computer product to "establish[] a connection with the communications console." (Compl. ¶ 12). The complaint alleges that True Value's EMV-PoS performs this step when it "establishes a connection with the EMV Token Service Provider."

(Compl. ¶ 12).  In short, the complaint identifies the EMV Token Service Provider (*i.e.*, the bank/credit card company) as the claimed "communications console."

Claim 21 further requires the computer product to "request[] the at least one identification reference from the at least one communications console," and "receiv[e] the at least one identification reference from the communications console."  (Compl. ¶ 13).



According to the complaint, True Value performs this step when "[t]he True Value EMV-PoS requests and receives an identification reference from the EMV Token Service."  (Compl. ¶ 13).  In short, the complaint also identifies the EMV Token Service Provider as the claimed "communications console."



Neither the customer's Mobile Device/Chip Card nor the bank/credit card company—both of which the complaint identifies as the accused "communications console"—are included as part of the accused True Value EMV card reader.

## II.    Argument

### A.    Legal Standard

In considering a motion to dismiss, a district court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff has pled "factual content [that] allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In making this assessment, the court accepts all facts alleged in the complaint as true but is not bound to accept the plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 662. Under Rule 12(b)(6), dismissal is proper "when the complaint lacks . . . a cognizable legal theory." *Bielskis v. Louisville Ladders Inc.*, No. 07 C 1411, 2007 WL 2088583, at *1 (N.D. Ill. July 18, 2007) (citing *Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995)).

### B. The Complaint Allegations Establish That The Accused Product Does Not Include a "Communications Console" And, Therefore, Does Not Infringe.

The complaint allegations, combined with black letter patent law principles, establish the following three points: (1) The claimed invention is a "computer product" that includes various components, including a "communications console"; (2) The claimed "communications console" must refer consistently to one particular component or structure; and (3) the complaint identifies two entirely different accused structures as the "communications console"—both of which are structures *outside of* the accused "computer product." In short, the complaint establishes that the claimed "communications console"—whatever that may be—is *not* a component of True Value's alleged "computer product." Accordingly, the pleadings themselves establish non-infringement as a matter of law.

### 1. The "Computer Product" Must Include a "Communications Console."

Claim 21 requires "A computer product comprising . . . a communications console. . . ." (Compl. ¶ 8). The term "comprising" is a well-established term of art in patent law that means "including but not limited to." *See, e.g.*, *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) ("In the patent claim context the term 'comprising' is well understood to mean 'including but not limited to'"). This term of art does not vary from case-to-case, and its meaning is not debatable. Accordingly, claim 21 requires a "computer product" that *includes* a

"communications console," among other things. To prove infringement, Mr. Grecia must establish that the accused "computer product"—*i.e.*, True Value's EMV-PoS—includes a "communications console" as part of its structure.

### 2. "Communications Console" Means One Thing Only.

For purposes of this motion, the Court need not construe the term "communications console"—it need only recognize that the term must have some meaning; *i.e.*, it must refer to one thing consistently. In other words, the claim cannot use this one term to refer to entirely different things. The Court should recognize this point for two reasons. First, as a general rule, claim terms should be construed consistently to mean the same thing each time it appears in a patent. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent"). Second, basic grammar rules and black-letter patent law establish that, each of the six times that the patent claim uses the term "communications console," it necessarily refers to the *same* "communications console" each time.

As the complaint allegations reflect, the patent first uses this term when it refers to: "A computer product comprising . . . *a* communications console" (emphasis added). (Compl. ¶ 9 (emphasis added)). The claim introduces this term with the indefinite article "a" because it has not previously mentioned any "communications console." Later, the patent claim uses the definite article "the" to refer to the "communications console":

> receiving the digital content access request from *the* communications console …

(Compl. ¶ 10 (emphasis added)).

> establishing a connection with *the* communications console, wherein *the* communications console is …

(Compl. ¶ 12 (emphasis added)).

> requesting the at least one identification reference from *the* at least one communications console . . . receiving the at least one identification reference from *the* communications console …

(Compl. ¶ 13 (emphasis added)).

Grammatically, the definite article "the" establishes that the claim refers to a particular "communications console," which has been identified previously. This grammatical rule has been canonized into patent law. *See Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim"). Each time the claim refers to "the communications console," it refers to the *same* communications console mentioned previously. In short, whatever "communications console" means, it must mean the same thing each time it appears in the claim.

### 3. The Complaint Alleges that the "Communications Console" Is Something Separate from the "Computer Product."

As described above, the Complaint allegations identify two entirely different accused structures as "*the* communications console." First, the complaint alleges that "*the* communications console" is something from which the "computer product" receives the verification token. (Compl. ¶ 10). The complaint alleges that True Value's EMV card reader ("computer product") receives the EMV Token ("verification token") from the customer's Mobile Device/Chip Card ("communications console"). (Compl. ¶ 10). In short, in this allegation, the accused "communications console" is the customer's Mobile Device/Chip Card.

But later, the Complaint alleges that "*the* communications console" is something else entirely: it is something to which the "computer product" sends a request for certain information (an "identification reference") and from which the "computer product" receives that information. (Compl. ¶¶ 12-13). The complaint alleges that True Value practices this claim element through its EMV card reader ("computer product"), which requests an "identification reference" from the

EMV Token Service Provider (*i.e.*, the card company/bank) and then receives that identification reference in return. (Compl. ¶¶ 12-13). In short, in this allegation, the accused "communications console" is the EMV Token Service Provider (*i.e.*, the card company/bank).

Since, as explained above, "the communications console" must refer consistently to one structure only, the complaint allegations—which point to two entirely different structures as the accused "communications console"—suggest a potentially fatal problem within the claim itself. But the Court need not address that issue on this motion, because even assuming that the term somehow can "read onto" two entirely different structures—the customer's Mobile Device/Chip Card *and* the EMV Token Service Provider's computer—*both* of these devices are separate from the True Value EMV card reader and are not included as part of its structure.

The complaint itself, therefore, establishes that the claimed "communications console"—whatever that may be—is *not* a component of True Value's alleged "computer product." At the same time, however, the complaint rightly recognizes that the accused True Value "computer product" *must* include the "communications console" to infringe the asserted patent claims.

This is an unusual case in which the infringement pleadings affirmatively disprove the infringement case—and therefore lend themselves to a threshold motion to dismiss on the merits. Given the nature of the problem, Mr. Grecia cannot plausibly re-plead his complaint in a way that would salvage his infringement claim. Accordingly, True Value asks the Court to dismiss Mr. Grecia's infringement claim with prejudice.

## III.     CONCLUSION

For the foregoing reasons, True Value respectfully requests that this Court dismiss Mr. Grecia's complaint with prejudice under Fed. R. Civ. P. 12(b)(6).

Dated: May 25, 2018                  Respectfully submitted:

                                /s/ Marina N. Saito
                                Edward H. Rice
                                Marina N. Saito
                                FREEBORN & PETERS LLP
                                311 South Wacker Drive, Suite 3000
                                Chicago, Illinois 60606
                                (312) 360-6000 (telephone)
                                (312) 360-6520(facsimile)
                                erice@freeborn.com
                                msaito@freeborn.com

                                *Counsel for Defendant,*
                                *True Value Company, L.L.C.*

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned attorney, certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on May 25, 2018.  Under Fed. R. Civ. P. 5(b)(3) and the Northern District of Illinois' LR 5.9, I have thereby electronically served all Filing Users.

/s/ Marina N. Saito
Marina N. Saito