# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM GRECIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 18 C 1886 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| TRUE VALUE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant True Value Company's ("True Value") motion to dismiss Plaintiff William Grecia's ("Grecia") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants True Value's motion and dismisses Grecia's Complaint.

## STATEMENT

The following facts are taken from Grecia's Complaint and assumed to be true for purposes of this motion. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in Grecia's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Grecia, an individual residing in Pennsylvania, owns United States Patent 8,533,860 (the "'860 Patent"). He alleges that True Value infringes on Claims 21, 22, and 24[1] of the '860 Patent.

Claim 21 is to "[a] computer product comprising a memory, a CPU, a communications console and a non-transitory computer usable medium….the computer product authorizing access to digital content…the computer product configured to perform the steps of…" Grecia states that "True Value uses an EMV Token Point-of-Sale computer product (EMV-PoS)[2] that authorizes access to users' digital financial content to complete purchases using a verification token (e.g., EMV Device Token) that is used as a substitute to the user's real card [primary account number] in EMV-PoS transaction requests." In simpler terms, this process creates secure transactions to eliminate the threat of credit card fraud.

The first step in Claim 21 that the computer product is configured to perform is:

receiving the digital content access request from the communications console, the access request being a read or write request of metadata of the digital content, the metadata of the digital content being one or more of a database or storage in connection with the computer product, the request comprising a verification token corresponding to the digital content, the verification token is handled by the user as a redeemable instrument, wherein the verification token comprises at least one of purchase permission…

Grecia claims: "The True Value EMV-PoS receives an access request to the user's digital financial content that is processed as a 'read' request of the connected EMV

---

[1] Grecia mistakenly identified his Claim 24 allegations as "Claim 23" in his Complaint. He rectified the issue in his Opposition brief.
[2] The True Value EMV-PoS, essentially a credit card reader, is the alleged infringing device. Throughout this Order, we also refer to this device as the "True Value device" and the "EMV-PoS."

card network Token Vault database (metadata) required to determine an access permission. The verification token (e.g., EMV Token) is handled by the user as a redeemable instrument (e.g., EMV Tokenized Mobile Device or Chip Card). The EMV Token (verification token) comprises a 'purchase permission.'"

The second step in Claim 21 is "authenticating the verification token…" Grecia alleges that the EMV Token is authenticated using the Luhn Formula for Computing Modulus 10 Check Digit. The third step in Claim 21 is:

> establishing a connection with the communications console, wherein the communications console is a combination of a graphic user interface (GUI) and an Applications Programmable Interface (API) wherein the API is related to a verified web service…

Grecia claims that the True Value EMV-PoS establishes a connection with the EMV Token Service Provider using an API related to the EMV Token Service Provider.

The fourth and fifth steps in Claim 21 that the computer product is configured to perform are "requesting the at least one identification reference from the at least one communications console, wherein the identification reference comprises one or more of a verified web service account identifier, letter, number, [etc.]" and "receiving the at least one identification reference from the communications console." Grecia alleges that "[t]he True Value EMV-PoS requests and receives an identification reference from the EMV Token Service comprising letters and numbers (e.g., Discover exchanges the [primary account number] for its token and sends the

3

token and "approved" or "declined" message response with the token back to True Value)."

The sixth and final step in Claim 21 is "writing at least one of the verification token or the identification reference into the said metadata." Grecia states that the True Value EMV-PoS writes the verification token to its connected storage for receipt printing and reference for refunds.

Claim 22 states:

> The computer product according to Claim 21, wherein the access request is a request from a first user, the first user is a human user in operation of the computer product and establishes first access to the digital content; or wherein the access request is a request from a secondary user, the secondary user is a human user in operation of the computer product and establishes secondary access to the same digital content as first established for access by the first user.

Grecia claims that the True Value EMV-PoS handles the EMV Token request from a first human user who accesses the digital financial content to complete the transaction. It also handles an EMV Token request from a second human user who establishes secondary access to the first user's digital financial content so the True Value EMV-PoS can process EMV Token refunds.

Claim 24 provides, "The computer product according to Claim 21, wherein the customization module customizes a user access panel." Grecia alleges that the True Value EMV-PoS customization module customizes the user access panel to include logos and other information.

4

On March 15, 2018, Grecia filed his patent infringement Complaint under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*. He seeks declaratory and injunctive relief, including a reasonable royalty and pre- and post-judgment interest.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). Grecia need not provide detailed factual allegations, but he must provide enough factual support to raise his right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Grecia's claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). His claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

True Value argues that Grecia not only failed to sufficiently state his claim, but effectively pleaded himself out of his claim. Claim 21 requires that the infringing device is a "computer product" comprised of various components, including a "communications console." The "communications console," referred to several times

throughout Claim 21, must refer to one particular component or structure. Yet, True Value argues, Grecia "identifies two entirely different accused structures as the 'communications console'—both of which are structures *outside of* the accused 'computer product.'" More specifically, True Value contends that Grecia identifies the communications console as both: (1) the customer's mobile device or chip card; and (2) the EMV Token Service Provider, *i.e.*, the bank/credit card company.

In his Response, Grecia focuses on True Value's final point, denying that he identified the communications console as anything other than a component within the EMV-PoS device. He contends that, as defined in Claim 21, the communications console is a "combination of a graphic user interface (GUI) and an Applications Programmable Interface (API)." Thus, he explains, his Complaint alleges that the EMV-PoS device has the GUI to receive the customer's credit card information and the API to request and receive the token from the Token Service.

Grecia has yet to identify which specific component in the True Value EMV-PoS is the communications console. Instead, he alleges that the True Value device itself "performs the functions" of the communications console. This circular reasoning has not only obfuscated the pleadings and briefing, it has also destroyed his claim.

In his Opposition brief, Grecia states that the communications console is responsible for performing the following four functions:

6

- "receiving a digital content access request from the communications console…"
- "establishing a connection with the communications console…"
- "requesting the at least one identification reference from the at least one communications console…"
- "receiving the at least one identification reference from the communications console…"

As True Value points out, Grecia's explanation creates a logical paradox, as the communications console is thus responsible for receiving a request from itself, establishing a connection with itself, requesting information from itself, and receiving that requested information from itself. Furthermore, Claim 21 states, and Grecia's Complaint alleges, that the *computer product*—not the communications console—performs the listed functions. Grecia attempts to reframe his Complaint by claiming that the True Value device, as the computer product, "performs the functions" of the communications console, thereby describing the True Value EMV-PoS as both the computer product and communications console. His attempt to place the communications console within the True Value device, however, fails to protect his claim.

Grecia's flawed circular reasoning betrays him when he contests True Value's argument that he identified the EMV Token Service Provider as the communications console. Grecia misrepresents the requirements of Claim 21 by stating that the True Value device "performs the remaining functions of the 'communications console' by establishing a connection with a token service provider." In reality, Claim 21 states that the *computer product* establishes a connection with the *communications console*.

In his Opposition brief, Grecia cites directly to the Complaint, which states: "The True Value EMV-PoS *establishes a connection with the EMV Token Service Provider*." (emphasis added). Grecia's Complaint unequivocally identifies the EMV Token Service Provider as the communications console. Grecia does not allege that the EMV Token Service Provider is located within the True Value device, nor does he counter True Value's argument that it is, in fact, located outside the device. This allegation alone destroys Grecia's claim.

Grecia also argues that True Value misrepresented his Complaint by claiming that Grecia identified the customer's mobile device or chip card as the communications console. Employing the same reasoning as above, Grecia contends that the Complaint alleges that the True Value device receives the customer's credit card information, "performing the function of the 'communications console.'" He adds that the customer's mobile device or chip card is the "verification token" that is received. While Grecia clarifies that he did not identify the customer's cell phone or chip card as the communications console, he again fails to explicitly state which component within the True Value device *is* the communications console. Simply stating that the EMV-PoS "performs the functions" of the communications console is insufficient to state his patent infringement claim.

Grecia's Complaint is confusing at best and pleads Grecia out of his claim at worst. Grecia likens this case to *Disc Disease Solutions, Inc. v. VGH Solutions, Inc.*, where the Federal Circuit reversed the grant of a motion to dismiss because the

complaint "specifically identified the three accused products…and alleged that the accused products meet 'each and every element of at least one claim' of [the plaintiff's patents]." 888 F.3d 1256, 1260 (Fed. Cir. 2018) ("These disclosures and allegations are enough to provide [the defendant] fair notice of infringement of the asserted patents."). Grecia argues that his Complaint identifies "a specific device and alleges that the accused device contains each of the six functions" in Claim 21 of the '860 Patent.

Grecia's Complaint, however, not only fails to identify any component within the True Value device as the communications console, but also disproves his infringement claim by identifying the communications console as something outside of the True Value device, *i.e.*, the Token Service Provider. Grecia essentially pleaded himself out of court by "pleading facts that establish an impenetrable defense to [his] claims." *Tamayo*, 526 F.3d at 1086 ("A plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (citations omitted). The Court dismisses Grecia's Complaint for failure to sufficiently state a claim of patent infringement.[3]

True Value asks the Court to dismiss Grecia's Complaint with prejudice, citing Grecia's choice to brief the motion to dismiss rather than amend his Complaint and arguing that re-pleading cannot salvage his infringement claim. While the Court is

---

[3] Claim 21 is the only "independent claim" raised in Grecia's Complaint. Because Claims 22 and 24 incorporate the limitations of Claim 21, True Value's noninfringement arguments regarding Claim 21 necessarily apply to claims 22 and 24. *See Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 n.5 (Fed. Cir. 2008). Finding that Grecia failed to state a claim of patent infringement on Claim 21, his Claim 22 and 24 allegations fail, as well.

skeptical that Grecia can resurrect his patent infringement claim by re-pleading, it declines to dismiss Grecia's Complaint with prejudice before he has an opportunity to amend.

## **CONCLUSION**

For the aforementioned reasons, the Court grants True Value's motion and dismisses Grecia's Complaint without prejudice. It is so ordered.

/s/ Charles P. Kocoras

Dated: 8/9/2018

Charles P. Kocoras
United States District Judge